Argued and submitted November 15, 1989, on handicap discrimination claim, dismissal vacated and remanded for findings and further proceedings; reversed and remanded on misrepresentation and implied duty of good faith and fair dealing claims; otherwise affirmed July 18, reconsideration denied September 19, petition for review denied December 18, 1990 (311 Or 13)

Casey ELLIOTT,
*Appellant,*

*v.*

TEKTRONIX, INC.,
and Dorothy Ericsen,
*Respondents.*

(A8703-01569; CA A50611)

796 P2d 361

Richard C. Busse, Portland, argued the cause and filed the briefs for appellant.

Charles F. Adams, Portland, argued the cause for respondents. With him on the brief were Mary K. Vander-Weele and Stoel Rives Boley Jones & Grey, Portland, and Eileen Drake, Tektronix Legal Counsel, Beaverton.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals a judgment for defendants in this action arising out of her discharge by defendant Tektronix (employer).[1]

Plaintiff worked for employer from 1976 until her discharge on August 20, 1986. At the time of her termination, she was employed as a security dispatcher. She was absent from work due to physical problems on numerous occasions during her tenure. Her attendance record led to a written warning and probation and was ultimately cited by defendant Ericsen, her supervisor, as the basis for her termination. Plaintiff initially sought reinstatement through employer's internal procedures, but her termination was upheld. She then filed this action for breach of her employment contract, misrepresentation, wrongful discharge and breach of the implied duty of good faith and fair dealing. The gravamen of those claims was that, in terminating her at will employment, defendants failed to follow a support services attendance policy to which they had allegedly committed themselves.[2] Plaintiff

---

[1] Plaintiff named both employer and her immediate supervisor, Ericsen, as defendants. Before trial, the court dismissed the breach of contract claim against Ericsen. Plaintiff does not dispute that ruling. Plaintiff also withdrew the misrepresentation and handicap discrimination claims against Ericsen at the start of trial, and so she is a party only to the wrongful discharge and implied duty of good faith and fair dealing claims.

[2] These claims were based on a February 29, 1984, memorandum from Ericsen to plaintiff:

"During the first 12 weeks of employment, you are expected to maintain a 95% attendance level. That is, if at any time during the first 12 weeks your total Net Lost Time exceeds 24 hours, immediate termination may be initiated.

"At the end of the first 12 weeks of employment, if you have a total of less than 25 hours of Net Lost Time, then you will be administered under the rules and procedures presented in the standard Support Services attendance policy."

The support services attendance policy cited in the memorandum stated, in pertinent part:

"1. An attendance rate approaching 95% is cause for concern and will result in documentation of an attendance discussion.

"2. An attendance rate lower than 95% over a 6-month period will result in a *written warning*. Attendance for the next 90 days must be at a level of at least 95%.

"* * * * *

"3. If a 95% attendance level in 90 days is not attained, the employee will be placed on a 90-day *written probation*. Wages will be frozen. The employee must attain 95% attendance level within the probationary period to invalidate the probation." (Emphasis in original.)

also asserted a claim for handicap discrimination, in which she alleged that she was terminated because of a perceived physical handicap. ORS 659.425; *see* ORS 659.121.[3]

The court granted defendants' motion to dismiss the claims for wrongful discharge and breach of the implied duty of good faith and fair dealing for failure to state a claim. It also dismissed the breach of contract claim against Ericsen for the same reason. After plaintiff presented her evidence at trial on the remaining claims, the court granted employer's motion to dismiss the handicap discrimination claim pursuant to ORCP 54B(2) and granted its motion for a directed verdict on the misrepresentation claim. The jury returned a special verdict for employer on the contract claim.

■ Plaintiff first contends that the court erred in dismissing the handicap discrimination claim. On appeal, the parties argue the merits of the dismissal. However, in dismissing the claim under ORCP 54B(2), the court did not make written findings. We therefore cannot determine how or why the court concluded that employer should prevail on the claim. We vacate the judgment of dismissal and remand for the court to make the required findings and for such other proceedings as are necessary. *Gearhart v. Employment Div.,* 99 Or App 601, 603, 783 P2d 536 (1989); *Greenwood Forest Products, Inc. v. Sapp,* 84 Or App 120, 124-25, 733 P2d 110, *rev den* 303 Or 454

---

[3] ORS 659.121 and 659.425 were amended by several acts adopted in 1989. The amendments do not apply to this case. At the relevant times, ORS 659.121(1) provided, in pertinent part:

"Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS * * * 659.425 may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employes with or without back pay."

ORS 659.425 provided, in pertinent part:

"(1) For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

(1987); *Joseph v. Cohen,* 61 Or App 559, 563, 658 P2d 544 (1983).[4]

■ Plaintiff next contends that the court erred in directing the verdict on her misrepresentation claim. She alleged in her second amended complaint that defendants misrepresented that

"(a) so long as she maintained an attendance rating of 95 percent over a six-month period she would not be disciplined for attendance by the company;

"(b) she would be held to the obligations and protections of the procedures specified in the standard support services attendance policy; and

"(c) her supervisor would abide by those procedures."

Employer's representations were allegedly made, in the main, through the February, 1984, memorandum to plaintiff from Ericsen. *See* note 2, *supra.* Employer argues that plaintiff failed to prove that she reasonably relied on the representations because, beginning approximately a year later, she was or should have been aware that employer was not following the policies that it represented that it would, but was imposing additional and different attendance standards. Employer seeks support for that proposition in *Albrant v. Sterling Furniture Co.,* 85 Or App 272, 736 P2d 201, *rev den* 304 Or 55 (1987), where we rejected the employer's contention that

"plaintiff had no right to rely, because the representations involved conditions which were modifiable at defendants' will. We disagree. The fact that defendants were offering plaintiff a position which was terminable at will does not mean that she could not reasonably rely on representations they made. *On the contrary, she had a right to rely until she knew or should have known that the terms had been modified.* We also conclude that the record contains sufficient evidence to support an inference that, when defendants confirmed the terms of plaintiff's employment before she accepted the job, they intended to impose different terms." 85 Or App at 275-76. (Emphasis supplied.)

---

[4] Plaintiff contends in a separate assignment that the court erred in striking from her handicap discrimination claim a prayer for "front pay," fringe benefits and expert witness fees. We need not reach that contention, given our disposition of the claim itself.

Employer reads the emphasized language as meaning that plaintiff's right to rely ended when she knew or should have known that employer was acting inconsistently with its representations. Plaintiff disagrees and contends that *Albrant* supports her, not employer, because "it held that although subsequent modification may affect the viability of a contract claim in an at-will employment situation, this will not deprive a fraud claim of vitality."

The disagreement arises from the fact that we held in *Albrant* that the representations concerning hours and wages, on which the plaintiff could rely for purposes of her misrepresentation claim, could not support her breach of contract claim. We explained that an "employer may * * * modify [an at will] employment contract so long as the modification applies only prospectively. An employe impliedly accepts such modifications by continuing employment after the modification." 85 Or App at 275. (Footnote omitted.) Therefore, an at will employer may make unilateral changes in employment terms, notwithstanding its previous representations, and not be subject to contract liability; however, for purposes of a fraud claim, the employee retains the right to rely on the representations "until she knew or should have known that the terms had been modified."

■ Plaintiff interprets *Albrant v. Sterling Furniture Co., supra,* as espousing the anomalous rule that an employee who accepts an employer's change of the original employment terms may nevertheless *continue* to rely on the employer's earlier representation about the original terms. We disagree. *Albrant* does not suggest that an employee's right to rely on the representations persists beyond her acceptance of the new terms; the first must necessarily end where the second begins.

In *Albrant,* all of the plaintiff's damages accrued before the employer changed the employment terms. Therefore, she still had a right to rely on the representations at the time that they produced her injuries. Here, the only compensatory damages that *can* be ascribed to the misrepresentations are those that stemmed from the subsequent discharge; the misrepresentations related only to the standards that would be applied to plaintiff's attendance problems and to any resulting disciplinary measures.

The question, therefore, is whether there was any

evidence that the discharge resulted from employer's application of new and more rigid attendance standards to plaintiff's absences that predated her awareness of the change in standards and that would not have exceeded the permissible limits on absenteeism under the original standards that employer represented it would apply. If there was, the jury could find that plaintiff had a right to rely on the representations at a time and in a connection that had some effect on the termination of her employment. We conclude that there was some evidence. The earliest time that plaintiff could have become aware of the change in standards was March, 1985. There was evidence that employer measured her attendance against the more rigorous standards for periods as early as January, 1985, and that her attendance rate would have been satisfactory for some or all of the time between then and March under the original standards. Given the continuum of events, the jury could also infer that the application of the new standards during the time period before plaintiff was or should have been aware of them could have contributed to the decision to discharge her. Plaintiff's evidence was sufficient to go to the fact finder on the reliance issue. She also adduced enough evidence on the other elements of her claim to reach the jury, and the trial court erred by directing the verdict.

Plaintiff also argues, as part of the same assignment of error, that the disposition of the misrepresentation claim requires a remand of the contract claim. She contends that withdrawing the misrepresentation claim from the jury "poisoned" the contract claim, because it cast doubt on the legitimacy of the testimony that she relied on to establish both claims. We find no error that affects the contract claim.

■     Plaintiff next argues that the court erred in refusing a requested jury instruction that outlined her theory of the breach of contract claim. However, she failed to take an exception to the functionally equivalent instruction that was given, and we do not find that instruction to be clearly erroneous. Therefore, plaintiff failed to preserve the error. ORCP 59H; *Thompson v. Inskeep,* 95 Or App 688, 770 P2d 953 (1989).

■     Plaintiff next contends that the court erred in dismissing her wrongful discharge claim against employer and Ericsen. ORCP 21A(8). Plaintiff alleged that she was wrongfully discharged, because,

"[o]n August 20, 1986 Plaintiff was terminated in retaliation for having protested a violation of her employment contract by Defendant Tektronix."

The parties may generally terminate an employment at will relationship at any time and for any reason. *See, e.g., Simpson v. Western Graphics,* 293 Or 96, 99, 643 P2d 1276 (1982). However, the Supreme Court outlined exceptions to that rule in *Delaney v. Taco Time Int'l.,* 297 Or 10, 681 P2d 114 (1984). Plaintiff contends that her situation falls within the second exception:

"In this category, the common law rule for at-will employment prevails unless the employee is discharged while pursuing a right related to his role as an employee and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw [*sic*]." 297 Or at 16.

Although this case involves the exercise of a right associated with plaintiff's employment, complaining about a perceived contractual breach is not a right identified by the constitution, a statute or case law as being related to an important public interest. *See Sieverson v. Allied Stores Corp.,* 97 Or App 315, 319, 776 P2d 38, *rev den* 308 Or 382 (1989). The wrongful discharge claim was correctly dismissed.

Finally, plaintiff contends that the court erred in dismissing her claim against employer and Ericsen for breach of the implied duty of good faith and fair dealing. She alleged:

"In administering the standard support services attendance policy Defendants breached their implied covenant of good faith and fair dealing with Plaintiff."

After the parties prepared their briefs, the Supreme Court decided *Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989), in which it considered whether an implied duty of good faith and fair dealing could be read into an employment at will contract. The court stated:

"This court has never held that a duty of good faith and fair dealing applies to at-will-employment contracts, insofar as the right to discharge at will is concerned. For a number of reasons, we decline to do so now. The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates 'the reasonable contractual expectations of the

parties.' *Best v. U.S. National Bank,* [303 Or 557, 563, 739 P2d 554 (1987)]; *see also Associated Oregon Veterans v. DVA,* 300 Or 441, 448-49, 712 P2d 103 (1985) (per curiam); *William C. Cornitius, Inc. v. Wheeler,* 276 Or 747, 754-55, 556 P2d 666 (1976).

"The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause. A duty of good faith and fair dealing is appropriate in matters pertaining to ongoing performance of at-will employment agreements. It is not appropriate to imply the duty if it is inconsistent with a provision of the contract." 308 Or at 233.

*See also State ex rel Roberts v. Public Finance Co.,* 294 Or 713, 662 P2d 330 (1983).

■ ■    We conclude that the parties to an employment at will contract are not subject to the implied duty of good faith and fair dealing insofar as the right to terminate is involved. However, if the parties agree to restrict the right to terminate at will, the duty of good faith applies to the restrictive terms, as it does to the performance and enforcement of all of the contractual terms except the right to terminate itself. *Best v. U.S. National Bank,* 303 Or 557, 561, 739 P2d 554 (1987). Plaintiff alleged that defendants breached their duty of good faith and fair dealing in performing the contractually agreed upon service attendance policy. A trier of fact could infer that that policy is a restriction on the right of termination. Plaintiff has stated a claim for breach of the implied duty of good faith and fair dealing.

■    Defendants nevertheless argue that any error in dismissing the claim was cured, because it was identical to the breach of contract claim. According to defendants, the jury determination on the latter claim disposed of the former, because the jury found that there was no breach of contract. We disagree. The implied duty issue was not litigated. The jury's finding that defendants did not breach the contract does not necessarily resolve the implied duty claim, because a party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract. *See Best v. U.S. National Bank, supra,* 303 Or at 561; *U.S. National Bank v. Boge,* 102 Or App 262, 794 P2d 801 (1990).

On handicap discrimination claim, dismissal vacated

and remanded for findings and further proceedings not inconsistent with this opinion; reversed and remanded on misrepresentation and implied duty of good faith and fair dealing claims; otherwise affirmed.