SWANSON, J.
Jeannie N. Sullivan appeals an order of the Florida Unemployment Appeals Commission affirming the decision of the appeals referee that disqualified Sullivan from receiving unemployment compensation benefits because of the referee’s finding that Sullivan voluntarily resigned her employment as a condition of a workers’ compensation agreement. We reverse.
While working as a supervisor for the employer, SMG Food & Beverage, LLC, Sullivan suffered chest pains and her hands turned blue when one of her “bosses” yelled at her. Paramedics were called and she was transported to the hospital to determine whether she was suffering a cardiac arrest. When Sullivan’s medical bills reached approximately $10,000, and she filed for workers’ compensation benefits, the employer offered her a settlement agreement. Paragraph “N” of the agreement was entitled “VOLUNTARY RESIGNATION FROM EMPLOYMENT,” and contained the following stipulation:
As a result of an irreparable employer/employee relationship, it is stipulated that the Employee/Claimant will voluntarily resign her employment and will not seek re-employment with [the employer].
The agreement to voluntarily resign and not seek re-employment is not being entered into due to any disabilities the Employee/Claimant may allege and is not the sole consideration for settlement of the claim referenced herein. The Employee/Claimant hereby acknowledges that this voluntary resignation of *1048 employment was her decision alone and involved no actions by or on behalf of the Employer/Carrier/Servicing Agent.... The Employee/Claimant’s voluntary resignation from further employment with [the employer] will take place immediately upon her signature, without any further action by any party.
However; because the agreement said nothing about whether she could collect unemployment compensation benefits, Sullivan informed her attorney she would not sign it. Accordingly, her attorney added a handwritten paragraph “0” to the agreement that was initialed by Sullivan and stated: “Employer/Carrier will not contest Claimant’s application or request for unemployment benefits.” As amended, the agreement was signed by Sullivan and her attorney on October 22, 2010, and by the attorney representing the employer on November 5, 2010.
Nevertheless, after Sullivan applied for unemployment benefits, she received a Notice of Determination from the Agency for Workforce Innovation dated November 30, 2010, informing her she was disqualified because her reason for quitting “was personal” and not attributable to the employer. Sullivan appealed the determination. At a hearing held before an appeals referee, the employer did not make an appearance and only Sullivan testified. After the hearing, the referee entered a decision affirming the November 30 determination and finding that because Sullivan had been the “moving party” in the separation, she voluntarily quit. The referee elaborated, finding Sullivan had quit in order to settle a workers’ compensation claim and stated, without citation to any authority: “The courts have consistently held that a claimant who resigns as a provision of a workers’ compensation settlement is not entitled to unemployment benefits.” Accordingly, the referee concluded that Sullivan remained disqualified from the receipt of unemployment benefits. The decision was affirmed by the Unemployment Appeals Commission, which concluded that the record adequately supported' the referee’s findings and her conclusions reasonably applied the law to the facts of the case.
Section 443.101(l)(a), Florida Statutes, disqualifies an individual for unemployment compensation benefits “[f]or the week in which he or she has voluntarily left work without good cause attributable to his or her employing unit[.]” “ ‘Good cause’ is that which ‘would reasonably impel the average able-bodied qualified worker to give up his or her employment.’ ” Antonucci v. Unemployment Appeals Comm’n, 793 So.2d 1116, 1117 (Fla. 4th DCA 2001) (quoting Wall v. Unemployment Appeals Comm’n, 682 So.2d 1187, 1188 (Fla. 4th DCA 1996)). In Lake v. Unemployment Appeals Commission, 931 So.2d 1065 (Fla. 4th DCA 2006), the claimant, as a result of being injured on the job, filed a workers’ compensation claim. The employer offered her light duty work, but the claimant instead opted for a lump sum settlement providing that she would not return to work for the employer. When the claimant sought unemployment benefits, the appeals referee found she had voluntarily quit her employment in order to accept the settlement. The Unemployment Appeals Commission affirmed. On appeal, the Fourth District affirmed the denial of benefits, applying the analysis utilized in Matter of Astrom, 362 So.2d 312 (Fla. 3d DCA 1978), to conclude the claimant had “left her employment voluntarily, when she agreed to the settlement which terminated her employment!.]” Id. at 1066.
In the present appeal, the Unemployment Appeals Commission likewise relies on Matter of Astrom, and cases like it *1049 wherein the unemployment claimants were given the option of taking early retirement in light of looming job cuts or company reorganizations. In Astrom, the claimants were advised of the employer’s decision to move the company’s maintenance base to New York, and were given the choice of early retirement and increased retirement benefits, or continuing employment until an undetermined future date. Several claimants who had elected early retirement and filed for unemployment benefits, were held to be disqualified. On appeal, the Third District affirmed the Commission’s decision. In contrasting the case before it to one wherein “mandatory retirement as of a definite date is tantamount to discharge,” id. at 315, the Third District considered the question in the case before it as “one of anticipatory discharge,” id., and accordingly concluded the claimants had voluntarily left their employment without good cause attributable to the employer.
Similarly, in Calle v. Unemployment Appeals Commission, 692 So.2d 961 (Fla. 4th DCA 1997), also cited by the Commission, the employer offered an early retirement package to employees over fifty years of age. Because the claimant’s department was scheduled to close down at an undetermined future date, the employer encouraged the claimant to take advantage of the package. The claimant did so and filed for unemployment benefits. The Unemployment Appeals Commission upheld the appeals referee’s conclusion that the claimant’s acceptance of the early retirement package was a voluntary abandonment of her employment. In affirming, the Fourth District noted “[t]he record reflects no employer conduct that can be deemed to have wrongfully caused [the claimant] to retire.” Id. at 961. Citing to Astrom, the Fourth District further held, “[rjather, [the claimant] simply had a good reason to voluntarily accept an early retirement opportunity.” Id.
However, in Rodriguez v. Florida Unemployment Appeals Commission, 851 So.2d 247 (Fla. 3d DCA 2003), the Third District reversed the denial of unemployment benefits to a claimant who had signed the employer’s buyout agreement offered in anticipation of pending budget cuts and left her employment. There was no evidence that the claimant’s position would have been terminated had she not accepted the buyout, but the agreement stated “the buyout would not interfere with applications for unemployment and those who accepted the buyout would acquire layoff status.” Id. at 248. The Commission in Rodriguez also relied on Calle to argue there was a “ ‘lack of good cause attributable to the employer’ where the claimant did not show evidence to support any employer wrongdoing,” contending “that only instances of wrongdoing or bad faith on the employer’s part constitute ‘good cause attributable to the employer.’ ” Id. Yet, the Third District ruled that section 443.101 “is not so limited.” Id. at 248-49. Rather, the court emphasized “[s]ection 443.031 mandates that, ‘This chapter shall be construed liberally to accomplish its purpose to promote employment security....” Id. Accordingly, it held, “[t]he strict construction urged by [the Commission] is thus inappropriate.” Id.
In so holding, the Third District agreed with this Court’s earlier decision in Mar-tell v. State of Florida Unemployment Appeals Commission, 654 So.2d 1203 (Fla. 1st DCA 1995), wherein we held the claimant did not leave her employment without good cause where she accepted a reduction in force separation package that specifically included a provision stating the release did not include a “waiver of any rights to ... unemployment insurance that employee may have.” Id. at 1204. The claimant *1050 sought and received unemployment compensation for approximately one year and then obtained a job. However, after she was laid off from that job, she again sought unemployment benefits from her original employer, which protested. A claims examiner concluded the claimant was not entitled to unemployment benefits because her reason for quitting was not attributable to the employer. After a hearing at which the employer did not appear, the appeals referee found the claimant had voluntarily quit her job in order to accept the reduction in force separation package and, thus, her reasons for leaving her employment were personal and not attributable to the employer. The Commission affirmed without discussion. In reversing, we concluded the evidence before the appeals referee did not support his finding that the claimant’s voluntary leaving of work was not with good cause attributable to the employer. Instead, we held, “[t]he particular circumstances of this case amounted to good cause which would impel the average reasonable worker to voluntarily quit her position.” Id.
In citing to Martell, the Third District in Rodriguez focused on the release and made the following observations:
Employers are to be held accountable for their actions and representations to employees, particularly when modifying terms of at-will employment and when seeking participation in voluntary layoffs, buyouts or other company initiated programs. Here [the claimant] received verbal and written representations from [the employer] about the uncertainty of her job and of a buyout package with a list of benefits, as well as assurances of eligibility for other benefits, i.e., unemployment compensation. These assurances by [the employer] were not wrongful but were designed to encourage or induce the acceptance of the voluntary buyout. Given the circumstances here and the liberal purpose of the statute authorizing unemployment benefits, the requirement of “good cause attributable to the employer” was satisfied.
851 So.2d at 249.
We find the foregoing analysis particularly on point in resolving the dispute in the instant case, which likewise involved an assurance from the employer in paragraph “0,” that should Sullivan accept the terms of the settlement agreement, the employer “[would] not contest Claimant’s application or request for unemployment benefits.” As in Rodriguez, that language provided the impetus for Sullivan’s acceptance of the agreement. Id. While Lake also involved a workers’ compensation settlement agreement, there is no indication in the opinion that the agreement contained similar assurances regarding unemployment benefits. Moreover, it applied the rationale of Astrom, which also underlay the decisions in Lake and Calle, as well as the Commission’s argument for affirmance in Rodriguez. Because we conclude the analysis employed in Rodriguez expresses the better view under the particular circumstances of this case, we decline to apply Astrom, Calle and Lake. In so doing, we consider it appropriate to emphasize the provisions of section 443.031, Florida Statutes, stating that chapter 443 “shall be liberally construed to accomplish its purpose to promote employment security ... [and] [a]ll doubts as to the proper construction of any provision of this chapter shall be resolved in favor of conformity with such requirements.”
The order of the Unemployment Appeals Commission is hereby REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.
ROBERTS and CLARK, JJ., Concur.